Majoeity Deport oe Committee awards seat to George T. Pierce.
In Assembly, January 28th, 1846.
Mr. Perkins, from the majority of the committee on privileges'and elections, to which was referred the petition of Epenetas Crosby, praying for a seat in this House now occupied by George T. Pierce, reported in writing as follows:
In Assembly, January 28¿A, 1846.
Deport oe the Committee on Privileges and Elections, on the Petition of Epenetus Crosby, Praying for the Seat in the House oe Assembly now occupied by George T. Pierce.
The committee to whom was referred the petition of Epenetus Crosby, praying the seat in this House now occupied by George T. Pierce, report that they have had the same under consideration.
That the said Epenetus Crosby, and the said George T. Pierce, appeared before your committee, and the said Epenetus Crosby proposed and oifered to prove to your committee, as follows :
1. That lie was born and has resided'in the county of Dutchess for the space of fifty-four years past, and for the space of twenty-one years has resided continuously and been engaged in the business of freighting and other mercantile business at Fishkill Landing, in election district Ho. 1 of the town of Fishkill in said county.
2. That he has invariably transacted his business, drawn and indorsed notes, checks, and. made out bills, and carried on all his correspondence in the name of “ JS. Crosby.”
3. That he has been extensively known in Dutchess county, and particularly in the' town of Fishkill, for twenty years past, and almost universally by the name of “E. Crosby” or “Squire Crosby,” and that when either of these names are mentioned, any .person having resided in the town one year would know who was meant.
*165 4. That there is no other person by the name of Epenetus Crosby in the comity, and no other person whom the name “E. Crosby” would designate.
5. That the petitioner was nominated and elected to the Assembly in 1844, and had been one year before nominated tor that office. That in 1845 he was the third.time nominated some weeks before the election, and that it was well known to the electors’ he was a candidate, and there was no other person of the name of Crosby a candidate for any office at that election.
6. That four of t\\&Jwe votes for “ E. Crosby,” uncounted by the town inspectors and board of county canvassers, were given by Levi W. Turrell, Richard Stockholm, John I. Ya-n ITagen and Elijah S. Parker, in election district No.' 1 of the town of Eishkill, and the other of the said Jme votes'was given by Reuben W. Nelson, in election district No. 1 of the town of Poughkeepsie, and that each of those persons would testify they cast said votes, intending them in good faith for your petitioner.
Y. By Jeduthan Roe, one of the inspectors of election in the town of Northeast, that at the poll wliere he sat, two full State tickets, with the name of EJpenetus Crosby for member of Assembly, among others, printed in full, were found in the State box, each containing folded within it a convention ballot. That neither of these, were counted or canvassed by the inspectors, and that no decision was made as to their legality or illegality, but that both were attached as they were found to the statement, and returned to the- board of county canvassers.
8. That the said statement, so returned, with these two said State tickets so attached, was before the board of county canvassers, and that the said State tickets were not counted or canvassed by them, because they contained convention tickets, and the statement was not sent back to the town inspectors.
9. That two votes, each having upon them four names for members of Assembly, were counted and canvassed improperly among others, to Greorge T. Pierce, in the town of Amenia.
10. That there was one vote for “E. Crosby ” in district No. 2 of the town of Eishkill not counted, and justly belonging to your petitioner.’
Your petitioner offers evidence establishing all these facts, taken in pursuance of statutory provisions, to your honorable committee.
The said George T. Pierce offered to prove to your committee as follows:
*166 1st. That one vote was given for him in. election district No. 2, in. Fishkill, Dutchess county, mislaid by the town canvassers, and.not counted to him.
2d. That one vote given for him in election district No. 2, in Poughkeepsie, Dutchess county, was illegally destroyed, without being counted to him.
3d. That one vote was counted and allowed to Epenetus Crosby which had four names on it, for the office of member of Assembly, the county of Dutchess being only entitled to three members of Assembly.
4th. That one vote given for E. P. Crosby, was canvassed and allowed to Epenetus Crosby, and one to G. T. Pierce rejected.
5th. That'several illegal votes were received for Epenetus Crosby, viz.: The votes of four negroes not having freehold estates, and three votes of non-residents of the county of Dutchess.
6th. That there were other persons, residents in the county of Dutchess, to whom the name E. Crosby would apply, viz.: Edward Crosby and Ebenezer Crosby.
Tth. That two other persons beside the four persons proposed to be produced by and on behalf of the said Epenetus Crosby, residents in district No. 1, in Fishkill, would prove they voted ballots for Assembly with E. Crosby written on them, and yet, only four 'ballots of that description are accounted for.
The counsel of Crosby, in reply to- the last or seventh offer of Mr. Pierce, said that the persons alluded to by Mr. Pierce would testify they intended to vote for Epenetus Crosby.
Your committee, following the Assembly precedent, in the case of Bovee against Sheldon, Assembly Documents of 1826, passed the following resolution:
On motion of Mr. Tefft, seconded by Mr. Harris,
liesolved, We will receive no evidence of any matter, back of the ballot-boxes, but will determine the question of the contested seat between Mr. Pierce and Mr. Crosby, upon the ballots which were actually cast, and will receive all evidence relative to the action of town and county canvassers in counting and canvassing the votes given.
Your committee, believing this the least expensive rule, equally likely to produce a just result, and a much more expeditious mode of disposing of the questions between the parties, than to open the wide-door for parol testimony, with its attendant evils, which has prevailed *167 in Congress, and in the case in our Supreme Court, in the case of Yates v. Furgerson, 8th Cowan’s Report.
The parties, under the preceding resolutions, have produced their proofs in relation to the votes given ‘for them respectively, by which it appears that the county board of canvassers canvassed and allowed to George T. Pierce four thousand and eighty-nine (4,089) votes, and to Epenetus Crosby four thousand and eighty-eight votes, and to E. Crosby, five votes, and to G. T. Pierce one vote. Tb^re appears, by the testimony, to have been some two or three votes given to George T. Pierce, and the same number to Epenetus Crosby, not canvassed or counted by the town board of canvassers, for reasons assigned in the evidence. These votes not counted and returned to the county board of canvassers, might not, if allowed, vary the result, and the question as to the right to the seat as between the parties, has been decided by your committee on the votes given for E. Crosby.
A majority of your committee have resolved to recommend to the House the allowance of those votes to Epenetus Crosby for the following reasons:
In 1826, votes given for M. I. Bovee were allowed to Matthew I. Bovee by the Assembly, giving Bovee the seat on those votes over Alexander Sheldon, a sitting member.
The Congress of the United States decide questions of this description upon the intentions of the voters, taking parol evidence of the intentions of the voters casting the ballot.
The Supreme Court in the case of Yates v. Furgerson, sént the case to a jury to try as a question of fact, whether votes given for F.‘ II. Yates were intended for Henry F. Yates.
The State canvassers, in cases where their decisions are subject to review by legislative assemblies, declare the election according to the correctly spelled ballots, with Christian names spelled at full length. But in canvassing the votes for presidential electors they adopt a different rule, viz.: the voter’s intention, indicated by the ballot; and in 1836 allowed votes with the initial letters only of the Christian name as good votes for the candidate.
Town and county boards of canvassers are mere ministerial officers. The statutes confer on them no judicial discretion. They are required by law to declare the election according to the ballot or returns to them ; they are clothed with no authority to take evidence or investigate intentions, or change the determinations of town boards of canvassers.
*168 The county board of canvassers of Dutchess county, upon the returns of the town boards of canvassers, were bound to declare the election of George T. Pierce.
But by the Constitution the Assembly are made the judges of the election of their own members, exercising the functions of both judge and jury, and by the decisions and determinations above cited, your committee are of opinion it is the duty of this House to decide the matter between George T. Pierce and Epenetus Crosby upon the intention of the voters giving the votes for E. Crosby.
The facts appearing before your committee are, that George T. Pierce was one of the regular candidates of one of the great political parties of the State; that Epenetus Crosby was one of the regular candidates of the other political party. It is admitted that Epenetus Crosby is a resident of Eishkill, in Dutchess county, and often called E. Crosby, and that four of the votes given for E. Crosby were given in Eishkill. It also appears, and is admitted, that there is resident in the county of Dutchess a citizen of the name of Edward Crosby, but that Edward Crosby does not reside in Eishkill.
Upon these facts a majority of your committee are of opinion that, judging upon circumstantial evidence as predicated on the ordinary actions of men at our elections, there can be no probable ground to doubt but that the votes given for E. Crosby were intended for Epe-netus Crosby; and that said Crosby is entitled to the seat now occupied by Mr. Pierce. A majority of your committee, therefore, recommend the following resolutions:
Resolved, That George T. Pierce is not entitled to the seat as member of Assembly now occupied by him.
Resolved, That Epenetus Crosby is entitled to the seat as member of Assembly now occupied by George T. Pierce.
All of which is respectfully submitted.
BISHOP PERKIN'S.
L. I. TEEFT.
IRA HARRIS.
J. T. BUSH.
January 28th, 1846.
Mr. Seacord dissents from this report.
See testimony and documents accompanying report, pages 9 to 46.
Assembly Documents, 1846, No. 45.
*169 On,motion of Mr. Seacord,
Ordered, That said report and resolutions be laid on the table.
Mr. Bailey moved that tbe said report, together with all the evidence upon the subject, and affidavits submitted to the committee on privileges and elections be printed.
Debates were had thereon, when, on motion of Mr. Ohatfield,
Ordered, That the said motion be laid on the table.
IN Assembly, January 29th, 1846.
MINORITY Report oe the CoMmittee on Privileges and Elections IN THE CASE OE CONTESTED SEAT BETWEEN GEORGE T. PlEROE AND Epenetus Crosby.
Mr. Seacord, from the minority of the committee on privileges and elections, to whom was referred the ‘ petition of Epenetus Crosby, praying for a seat in this House now occupied by George T. Pierce, reported in writing as follows:
In Assehbly, January 29th, 1846.
Report of the Minority of the OoMMIttee on Privileges and ELECTIONS ON THE'PETITION OF EpENETUS CrOSBY FOR A SEAT IN the House of Assembly, now occupied by Geo. T. Pierce.
The undersigned, a minority of the committee on privileges and elections, is compelled to differ with a majority of said committee, in their report on the petition of Epenetus Crosby of the county of Dutchess, for a seat in this House now occupied by George T, Pierce.
It may be premised, that the principal question which the committee and the House have to determine, in this case, is, whether votes in which the initial letter only of the first name of the person claiming them is given, should be allowed to such person.
Eor although a large quantity of testimony has been taken with regard to other votes of various descriptions, canvassed and rejected, at the late election in the county of Dutchess,-still the undersigned understands the majority of the committee to concede that the evidence in these several cases does not alter the complexion of the general case,, hut leaves Mr. Pierce with his majority of one vote, at least, with which the investigation was commenced. Even if the two votes from the town of North East should be allowed to Mr. Crosby, as it is claimed they ought to be, the undersigned is clearly of opinion that the sitting member has offset these by one ballot shown to have *170 been destroyed in district No. 3, of the town of Poughkeepsie, and another in district No. 2, of the town of Fishkill; both of which contained his name among others, and ought to have been canvassed.
"With regard to the two ballots in the town of Amenla, one of which had some indistinct letters written on its margin, and has been abandoned by the contestant in this case, and the other of which had the word “’Wheeler” written on its margin without the erasure of any printed name, the undersigned cannot think that either of these ballots was thereby'rendered defective. Because the word “Wheeler” was not such a name as the inspectors of election could canvass for any person, and therefore, this was not such a case as it was'the intention of the statute to provide against, when it declared that ballots having an excess of names for any office shall be destroyed.
With regard to the ballot in district No. 2, in the town of Eishkill, which the contestant in this case claims should be allowed to him on the testimony of Mr. Terry that it was given for E. Crosby, it is sufficient to say that Mr. Baxter, the inspector of election through whose hands the ticket passed, swears that the name of Daniel Sherwood was erased and the word “ Crosby,” instead of E. Crosby, written on the margin, a discrepancy between the two witnesses which must destroy the effect of their evidence. It seems to the undersigned, that the sitting member, Mr. Pierce, might insist with much more propriety on the vote in district No. 4, of the town of Eishkill, which the inspector of that district swears was written E. P. Crosby, the P. an old fashioned one, larger than usual, and placed at some distance from the E., giving it the appearance of a middle letter. But whether this vote is relied on or not, the undersigned considers that the sitting member is thus far left with a clear majority in his favor and entitled to his seat.
This brings us back to the principal point at issue between the parties, viz.: whether, under any circumstances, and if so, what circumstances, votes in which only the initial letter of the first name of the person claiming tliem'is given, should be allowed for such person and canvassed.
There are five such votes returned in the present case as given for E. Crosby and one for G-. T. Pierce. The allowance of these votes by the House would give the contestant here his seat, while their rejection leave the case as it stands at present.
According to the act respecting elections, passed April, 1842, and the instructions of tfie Secretary of State under that act, no vote which *171 is not written out in full in the Christian and surname, and also correctly, at least so as to sound like the name for which it is claimed, or which is not abbreviated by the well known and universally established abbreviations, is permitted to be canvassed, but - must be returned as'scattering, etc.
Now it would seem that the language of this act was too plain to •be misuuderstood. But against the words of the law is invoked the language of precedent. The undersigned understands the chairman of the committee distinctly to admit, “ that if this was a new case, he would have no hesitation in adhering to the strict letter of the law, and the instructions of the Secretary of State under it.” But is this not the first case under the act of 1842 ? Are we not about to establish the first precedent under that act ? And is it not important that our decision (if it is to stand as a precedent to overshadow the law) should be such a one that it can lead to no evil consequences in future ?
If the framers of the election law, and the Secretary of the State, intended that initial votes should be allowed for the candidate claiming them, why was it not said so? And why did they not establish some rule by which it should be determined who was entitled to them? Why did they adopt the rule of abbreviations instead of initials? Obviously because Wm., Jno.,Hen., Abm., &c., the examples given in the instructions, could stand for no names but William, John, Henry, Abram, &c., and therefore amounted to absolute certainty. But they knew that W. does not always stand for William, nor J. for John, nor A. for Ábram, nor E. for Epenetus, and therefore did not think it safe to substitute the latter for the former.- They knew that the abbreviations given could not be tortured into any thing else, while the meaning of simple initials could be perverted by prejudice, altered according to circumstances, or wielded by misconstruction.
But the answer to all this, is, it seems, that the law was made for town and county canvassers. But, was it not also made for the Legislature? Are we not bound by our oWn acts?. Shall there be one law for the people and another and unwritten law, resting in discretion alone, for us ?, It seems to the undersigned, that the law is intended to apply to the whole community — to the Legislature, as well as to the town and county canvassers. It seems to the undersigned that it is the only safe law, and that if it is once disregarded there is no limit to the discretion of the Legislature or of the boards of canvassers.
*172 If, as it is maintained, the intent of the voter is to govern, when not legally and fully expressed, instead of the law, where is to be the limit of the rule ? If votes for E. Crosby may be allowed, why not votes for “ Crosby ” simply, without any Christian name? And if the latter, why may not the elector vote for one person and show an intent to vote for another? On this principle the undersigned was not at all surprised to hear the attorney for Mr. Crosby maintain, with regard to a certain ballot from the town of Amenia which had the word “"Wheeler” written on the margin, without the erasure of any name, that it was obviously the intention of the elector in that case to vote for one Hiram "Wheeler, and to erase one of the printed names, and he insisted that the name of Greorge T. Pierce on said ballot ought not to have been allowed and canvassed.
But it is in vain, perhaps, to reason on this subject, as the undersigned understands the chairman of the committee to admit that the principle attempted to be established by the report of the majority is dangerous and wrong; but that the preceden ts are such that he is compelled to pursue the course recommended in his report. Now, the undersigned has little acquaintance with law or precedent, but it seems to him a strange case, which should be compelled to eschew all reason and argument in the manner in which the majority of the committee have done, and 'rely alone on precedent. The majority have not attempted by argument to sustain a different construction of the law from the undersigned. And whether “ the winding sheet of precedent” is to be suffered to enwrap a plain, simple and distinct provision of the statute till it becomes no longer the same provision that it was before, is to be seen.
To avail ourself of the language of another, after substituting the word stai/ute for the word constitution, wherever the latter occurs, “ we are'told that like cases have occurred before, as though repetition could sanctify iniquity; as though a statute without ambiguity could be prostrated by precedent. It is fortunate for the State that public officers are not sworn to support legislative precedents, otherwise we should have an annual exhibition of the profligate legislation of 1836. * * * . * Of what possible use are written statutes if their provisions can be canceled by legislative precedent ? If the very tribunal which they are intended to restrain, can nullify their provisions by precedent, it is quite apparent that they are utterly useless.”
But let us examine the precedents upon which the majority of the *173 committee rely. And first, it is said that Congress is in the practice of inquiring into the intention of the voter, in cases similar to the present. Now this may he so, but the undersigned had thought that after the majority of the committee had refused to permit the sitting-member to go into the proof of illegal votes, after the manner constantly pursued in Congress, that they would have been the last to adopt the practice of the body they had already condemned. Besides, the rule adopted in Congress had its origin in the different legislation of some of the States, and is accompanied by the practice of receiving the testimony of the voter himself, as to his intentions; a practice which the undersigned trusts will never be adopted in j±ds State, and which the present case has shown so dangerous. Where, as in some of the southern States, the elector advances to the poll and names his candidate, and his preference is recorded, it may do to allow him afterward to explain his vote. But for the adoption of such a rule in this State, where the elector casts a concealed ballot, the minority of the committee believes no one will contend.
The next case cited by the majority of the committee, is that of Bovee against Sheldon, at the session of the Legislature of 1-826. The report of the committee in that case, as the Ho'use will perceive by a reference to it, was entirely against the allowance of initial votes under any circumstances. But when the report came before the House, the latter dissented from the results at which the committee had arrived, and declared Alexander Sheldon not entitled to his seat, by a majority of one vote out of one hundred or one hundred and fifteen. And it is proper to inquire on what grounds ,the House came to such a conclusion. Such an inquiry is material to the present case, and it may be answered by reference to the debates of that period.
When the report came before the House, the present Judge Yan-derpoel moved that it be referred back to the committee, with instructions to make certain inquiries which had been ruled out when the parties were before it, and one of which was,- whether there was any other man of the name of Bovee in the county of Montgomery whose Christian name begins with M. He contended that if there was no such person, Mr. Bovee ought to be considered by the House as the legal representative of the electors of the county.
The Speaker, Col. Young, said the applicant (Bovee), offered to prove before the committee, that there was no other person of his name in the county of Montgomery, and it was not pretended by the *174 sitting members that there was a person of that name other than the applicant. Why then hesitate, etc. ? The Speaker would put a case : Suppose on a ballot of the House for a committee, Alexander Sheldon should have ten votes, Elisha W. King eight votes, and E. W. King ninety votes. Could we hesitate as to who was meant by E. W. King ? And why not ? Because it is well known tfiat there is but one 'member in the House of the name of King, the initials of whose name are E. W. So in the casé under consideration it was offered to he proved that there was but one man in the county of Montgomery of the name of Bovee whose initials were M. J.; consequently, those votes given for M. J. Bovee ought to be placed to the account of Matthias J. Bovee, the applicant for the seat.
Mr. Ogden Hoffman said that it appeared to be admitted on all sides that if there were two persons of the same name of the candidate voted for in the county, there was no criterion by which it could be determined which was the chhice of the elector.
So again, with the case of Yates, cited by the majority of the committee, from the 8th of Oowen’s Reports. In that case, the present chancellor of the State declined to receive evidence which went to the intent of the voter. But it was carried to the Supreme Court, and Judge Savage decided that the following “were facts which, if proven, would justify the jury in finding that these votes were intended and given for the-relator, viz.: That the relator frequently subscribed his name H. F. Yates; that he had formerly been clerk, and then was a candidate for that office; that people would generally apply those letters to the relator, and that no other person was Imown in the county to whom those initials were applicable.” Thus it will be seen that even Judge Savage, with his latitudinal’]'an principles on this subject, falls far short of the present case in his decision.
As to the course pursued by the State canvassers, the undersigned has always supposed that, in law, the last case overruled all prior cases of the same or inferior tribunals. He was, therefore, surprised to hear the majority of the committee, who rely exclusively on precedent, cite the canvass of 1836, which was completely overruled in the point material to the present case by the canvass of 1840, and near 1,000 votes returned as given for J. P. Phoenix rejected because they did not contain the .full name. The undersigned does not refer to the latter case so much for a precedent as he does to show the necessity of a fixed and stable rule hereafter.
If we are to he governed by precedent, then, in the decision of this *175 case, the minority of the committee must beg leave to differ entirely with the majority in the conclusion to which they have come ; since he finds no well settled and established precedent for the allowance of initial votes to those for whom they are elaimed, unless it appears that there is no possibility of a misapplication, or unless there is no other person of the same initials in the election district to whom they could be applied. And all seem to enter even this circumscribed field with a reluctance indicative of the imminent danger to be apprehended from perversion or misconstruction. Would it be safe and proper, then, for this House to go still further, and allow these votes to the contestant in this case, when it is in.proof, and admitted by the majority of the committee, that there is another E. Orosby in the county of Dutchess for whom they might have been cast and intended.
The committee decided that they would not go behind the ballot-box to inquire the intention of the voter, but would infer that intention from the ballots themselves. On these principles, the undersigned is unable to understand how the majority of the committee can arrive at any more correct conclusion on this subject than the House itself.
If there were no other E. Orosby in the county of Dutchess than Epenetus Crosby, the contestant in this case, there might be little difficulty or danger in inferring the intent of the voter. But is not the inference that these votes were intended for Epenetus Orosby, repelled, by showing more than one E. Orosby in the county? The undersigned thinks it is; and believes it would be dangerous for the committee or the House to make the selection between them.
The majority of the committee admit that there is an Edward Orosby in 'the county of Dutchess; but'because the said Edward Orosby does not reside in the town of Fishkill (although he may have done so at some time before), but the said Epenetus Orosby does so reside, and lias once before been a candidate, &c., therefore it is perfectly satisfactory to the majority of the committee, if the undersigned understand them, that the votes in question were intended for Epene-tus Orosby. Now the undersigned is not prepared to say, “on the evidence of any matter not behind the ballot-box,” that these votes were intended for Epenetus Orosby any more than for Edward Orosby, or some other Orosby living in the same county to whom they would apply. And for this reason, he does not feel warranted in forcing a construction of the intent of the voter, and thereby depriving the latter of ,the right of throwing his vote for whom he chooses.
*176 The majority of the committee state, “that judging from, circumstantial evidence, as predicated on the ordinary actions of men at our elections, there can be no probable ground to doubt that the votes given for E. Crosby* were intended for Epenetns Crosby.” The undersigned would respectfully dissent from this conclusion, for it is no extraordinary case, and one which has frequently come under the observation of the undersigned, that the actions of men in voting are sometimes embarrassed by their depen dance upon a candidate of opposite politics to themselves. In such a case, in order to cornply with an implied obligation to vote for their patron, and at the same time not to prejudice their own principles, they cast an initial vote, well knowing that will not 'be allowed or canvassed, but returned as scattering. Whether it was so in the present case, the undersigned is unable to say. But it is enough for him that it may have been so; for he deems it his duty to keep on the safe side in the decision of the matter.
And inasmuch as we are about to settle the first case under the law of 1842, it is proper that our decision should be made on safe and correct principles, and established on such a basis as shall leave no doubt or embarrassment on those who shall be called to act upon it hereafter. Therefore it is that the undersigned has felt constrained to present to the House these considerations, and to insist that the votes returned for E. Crosby ought not to be allowed to the contestant in this case.-
As to the other portions of the report of the majority, the undersigned generally concurs ; and asks leave to introduce the following resolutions:
Resolved, That George T. Pierce is entitled to the seat now occupied by him in this House, ás a representative of the county of Dutchess.
Resolved, That Epenetus Crosby is not entitled to a seat in this House as a representative from the county of Dutchess, and that the petitioner have leave to withdraw his petition.
All of which is respectfully submitted.
WILKINS SEACOED.
An affidavit, of which the following was the substance, has been ■ mislaid or lost, and therefore does not appear among the evidence appended to the report of the majority of the committee :
*177 Affidavit of John Ii. Ross, of distbiot No. 1, of the town of Fisi-ikill.
That he voted a ballot at the late election, in said district, with one of the priuted names for member of Assembly erased, and the name of E. Crosby substituted therefor, and that he intended by the said E. Crosby any one that the board of inspectors should choose to apply it to. And further said deponent saith not.
Assembly Documents, 1846, No. 46.
On motion of Mr. Bailey,
Ordered,, That the said report and resolutions be laid on the table, and that the same be printed.
On motion of Mr. Bailey,
The House then proceeded to the consideration of the motion made by him yesterday, to wit: That the report of the- majority of the committee on privileges and elections on the petition of Epenetus Crosby, together with all the evidence upon the subject, and affidavits submitted to the committee, be printed.
The Speaker put the question whether the House would agree to the said motion of Mr. Bailey, and it was determined in the affirmative.
Assembly Journal, 1846, pages 230, 231.
Committee of the Whole — Piebce-Obosby contested seat.
In Assembly, February 9, 1846.
On motion of Mr. Bailey,
Ordered," That the reports of the majority' and minority of the committee on privileges and elections, together with the papers relating to the same, in the case of the contested seat in this House, on the part of Epenetus Crosby, be-taken from the table and committed to a committee of the whole House.
On motion of Mr. Perkins the House then resolved itself into a committee of the whole on the resolutions reported by the majority of the committee on privileges and elections, on the petition of Epenetus Crosby praying for a seat in this House, now occupied by, George T. Pierce, which said resolutions are in the words following, to wit: *
Resolved, That George T. Pierce is not entitled to the seat as a member of Assembly, now occupied by him.
Resolved, That Epenetus Crosby is entitled to the seat as member *178 of Assembly, now occupied by George T. Pierce, together with the resolutions reported by the minority of the said committee, which are in the words following, to wit:
Resolved, That George T. Pierce is entitled to the seat now occupied by him in this House, as a representative from the county , of Dutchess.
Resolved, That Epenetus Crosby is not entitled to a seat in this House as a representative from the county of Dutchess, and that the petitioner have leaveto withdraw his petition.
And after some time spent thereon, Mr. Speaker resumed the chair and Mr. S. Lawrence .from the said committee reported progress, and asken for and obtained leave to sit again.
Assembly Journal 1846, pages 321, 322.
In Assembly, February 10, 1846.
Committee op the Whole.
On motion of Mr. Pierce, the House then again resolved itself into a committee of the whole on the resolutions reported by the majority and minority of the committee on privileges and elections, on the petition of Epenetus Crosby, praying for a seat in this House, now occupied by George T. Pierce; and after some time spent thereon, Mr. Speaker resumed the chair, and Mr. S. Lawrence, from said committee, imported progress, and asked for and obtained leave to sit again.
Assembly Journal, 1846, page 329.
In Assembly, February 12, 1846.
On motion of Mr. J. R. Thompson, the House then, again resolved itself into a committee of the whole on the resolutions reported by the majority and minority of the committee on privileges and elections on the petition of Epenetus Crosby, praying for a seat in this House, now occupied by George T. Pierce, and after some time spent thereon, Mr. Speaker resumed the chair, and Mr. S. Lawrence, from the said committee, reported that the committee had amended the resolution reported by the majority of the committee on privileges and elections "so as to read as follows, to wit:
Resolved, That George T. Pierce is entitled to the seat as a member of Assembly now occupied by him, and that the committee had" agreed to the said resolution, as amended, which he was directed to report to the House.
*179 Mr. Speaker put the question whether the House would agree with the committee of the whole in their said report, and it was determined in the negative, as follows, to wit:
Ayes 58. Hays 59.
Mr. "Worden offered for the consideration of the House a resolution in the words following, to wit:
ResoVoed, That Epenetns Crosby is entitled to the seat as a member of Assembly, now occupied by Greorge T. Pierce.
Mr. Watson moved to amend the said resolution, by. offering the following as a substitute therefor, to wit:
Resolved, That the question of the seat contested between George T. Pierce and Epenetus Crosby be referred back to the standing committee on privileges and elections, with instructions to hear evidence which may be offered by either candidate as to the legality of the votes polled for either of them, or any other question of fact involved, and to report the same to this House within twelve days.
Mr. Speaker then put the question whether the House would agree to the said resolution, and it was determined in the negative, as follows:
Ayes. 57. Hays 59.
Mr. Speaker then put the queátion whether the House would agree to the resolution offered by Mr. Worden, and it was determined in the negative, as follows, to wit:
Ayes 58. Nays 59.
Assembly Journal, 1846, pages 344, 345, 346, 347.
If Assembly, February 13th\ 1846.
Mr. Stevenson moved a reconsideration of the vote of yesterday on the question of agreeing with the report of the committee of the whole, in the case of the petition of Epenetns Crosby for a seat in this House.
Debates wTere had thereon.
Mr. Speaker put the question whether the House would agree to the said motion of Mr. Stevenson, and it was carried, as follows:
Ayes 60.' Hays 53.
Assembly Journal, 357, 358:
Irr Assembly, February U0>ih, 1846.
By unanimous consent of Mr. Chatfield.
Resolved, That Epenetus Crosby, who has appeared before this House and contested the seat of Hon. George T. Pierce, be ’allowed *180 the traveling and per diem pay of members of this House, up to this day, and also the expenses incurred by him in taking testimony to sustain his claim to said seat, to be paid out of the contingent fund of - this House.
Assembly Journal, 1846, page 368.